UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:20-cr-11 |
| v. | ) | |
| | ) | JUDGE COLLIER |
| LANCE FARRELL | ) | MAGISTRATE JUDGE LEE |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR PRETRIAL RELEASE**

The United States of America respectfully responds as follows in opposition to the Motion for Pretrial Release filed by defendant Lance Farrell on June 26, 2020 (Doc. 147). The Court should deny that motion, because the defendant is unable to rebut the statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the [the defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). In addition to that presumption, which applies because the grand jury charged the defendant with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, see id., the weight of the evidence of the defendant's dangerousness, and his history and characteristics, compel the conclusion that the risk of him fleeing or harming a member of the community cannot reasonably be mitigated by any combination of conditions. Nor is there any medical reason to override the statutory presumption in favor of detention.

On September 12, 2019, the defendant engaged law enforcement officers on a high-speed chase (at speeds around 80 m.p.h.) after leaving the home of fellow drug-trafficker and co-defendant Martin Chouinard, who has signed a plea agreement admitting his guilt in this conspiracy. During that chase, the defendant dropped a backpack containing 39 grams of methamphetamine packaged in seven bags (ranging from one to 15.2 grams per bag), a digital

scale, and $10,000 in cash. Upon his arrest, he was found to have an additional $3,104 in cash on his person. Less than a month after that arrest (and while on bond for it), on October 8, 2019, the defendant crashed his motorcycle and was found in the immediate area of a backpack containing about 50 grams of methamphetamine packaged in 30 bags (ranging from 0.4 to 19 grams per bag) and two digital scales. He had $9,008 in his wallet and pants pockets. He told citizen responders not to call the police, even though he had a valid license and no warrants, and was hurt very badly.

In addition to the evidence obtained in those two incidents, other co-defendants who have executed plea agreements admitting their guilt in this conspiracy have implicated the defendant as a methamphetamine co-conspirator. For example, Michael Stansberry admitted in his plea agreement (Doc. 108, filed April 15, 2020) that "he had purchased methamphetamine for resale from co-defendant Lance Farrell in quantities of an ounce or two at a time." (Doc. 108 at 3). In addition, Matthew Burke admitted in his plea agreement (Doc. 115, filed May 13, 2020) that "he had purchased four or five ounces of methamphetamine from another supplier for co-defendant Lance Farrell to resell." (Doc. 115 at 4).

The defendant's history of dangerousness and of recklessly evading arrest long predates the current conspiracy. In 2006, he was convicted of reckless endangerment, reckless driving, failure to yield to emergency vehicle, and evading arrest using a motor vehicle. Those convictions resulted from an incident in which the defendant accelerated away from a law enforcement officer who was trying to stop his vehicle, drove away "at a very high rate of speed crossing into the opposite lane of travel," and "attempted to negotiate a curve at a high rate of speed" before "losing control" and driving off the roadway where his vehicle became disabled. The arrest report for that incident is attached hereto as <u>Exhibit 1</u> ("Meigs County Sheriff's Department Preliminary Investigative Report").

Similarly, in 2010, the defendant was convicted of felony evading arrest as well as reckless driving, as a result of another high-speed chase that ended in the defendant crashing a vehicle. There, the defendant was driving a stolen truck when he sped away from a sheriff's deputy who was attempting to stop him with blue lights and siren activated. The defendant refused to stop, slid across the roadway, and crashed into a ditch. The arrest report for that incident is attached hereto as Exhibit 2 ("Monroe County Sheriff Department Incident Report").

In addition to his particularly dangerous refusals to obey the law in each of the three high-speed chases described above, and his commission of the October 8th offense while on bond for the September 12th offense, the defendant has demonstrated an inability to comply with the conditions of his various sentences of probation. It appears he has had his probation revoked no fewer than seven times. Despite his deplorable history of recklessly fleeing from law enforcement, the overwhelming evidence of his dangerousness as a drug trafficker, and his unwillingness to comply with previous conditions of bond or probation, the defendant asks to be released before his trial on August 3, 2020, because he "has been in the custody of the Attorney General for almost five months, while suffering serious health issues in an environment that cannot protect him from . . . the current COVID-19 pandemic." (Doc. 147 at 2). Respectfully, even if that contention outweighed the defendant's demonstrated history of extreme dangerousness and penchant for flight, the facts do not support it.

According to Deputy United States Marshal Ted Gregory, the defendant has not sought medical treatment since March 13, 2020, and has tested negative for COVID-19. Specifically, DUSM Gregory stated as follows, in an email to the undersigned on June 30, 2020:

> Inmate Farrell disclosed during his initial medical exam at Bradley County that he was in a bad vehicle accident in October 2018 [sic]. As a result his gall bladder and spleen were removed. He also reported he had three screws in his hip and had broken ribs. His last and only request to be seen by the doctor was on 3/13/20. As a result of that

3

appointment he was given ibuprofen and another OTC for sinus for cold symptoms. He has tested negative for Covid-19. I have personally not heard of any issues with this inmate.

*Ted Gregory*
Deputy U.S. Marshal
900 Georgia Ave, Suite 340
Chattanooga, TN 37402

Thus, the defendant has not yet sought any medical treatment that is unavailable to him in jail, nor has he established that his medical needs cannot be met there. In order to overcome the presumption in favor of detention and the overwhelming evidence of the defendant's dangerousness and risk of flight, he must present compelling evidence beyond a bare and thus-far-unsupported assertion that the jail is unable to protect him from COVID-19.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

By:     */s/ Joseph G. DeGaetano*
Joseph G. DeGaetano, BPR #21448
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, TN 37402
Joseph.DeGaetano@usdoj.gov
(423) 752-5140