UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 1:20-cr-11 |
| v. | ) | |
| | ) | Judge Collier/Lee |
| LANCE FARRELL | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Lance Farrell, and the defendant's attorney, Joshua S. Lowther, have agreed upon the following:

1. The defendant will plead guilty to the following counts in the Second Superseding Indictment:

   a. <u>Count One</u>: Conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual) and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. The punishment for this offense is as follows:

   <u>Count One (21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A))</u>

   Imprisonment for not less than 10 years and up to life; a fine of up to $10,000,000; supervised release for a period of at least 5 years; any lawful restitution and forfeiture; and a $100 special assessment.

   b. <u>Count Four</u>: Possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation

1

of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). The punishment for this offense is as follows:

Count Four (21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

Imprisonment for up to 20 years; supervised release for at least 3 years and up to life; a fine of up to $1,000,000; any lawful restitution and forfeiture; and a $100 special assessment.

2. The government agrees to move at sentencing to dismiss the remaining count against the defendant in the Second Superseding Indictment (Count Five), as well as the original Indictment and Superseding Indictment against the defendant.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

Count One (21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A))

a. Two or more persons conspired to distribute methamphetamine;

b. The defendant knowingly and voluntarily joined the conspiracy; and

c. The conspiracy involved 50 grams or more of methamphetamine (actual) or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

Count Four (21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

a. The defendant knowingly and intentionally possessed a mixture or substance containing a detectable amount of methamphetamine; and

b. The defendant intended to distribute the mixture or substance containing a detectable amount of methamphetamine.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of

the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

    a.    Between February of 2019 and October of 2019, Lance Farrell conspired with co-defendants and others to distribute methamphetamine in the Eastern District of Tennessee. Farrell's primary role in the conspiracy was to buy methamphetamine from co-defendants including Matthew Burke, Martin Chouinard, and Melinda Goins, and resell it to others.

    b.    On March 20, 2019, a co-conspirator told law enforcement officers that s/he recently sold Farrell a kilogram of methamphetamine. On June 5, 2019, another co-conspirator told law enforcement officers that s/he had sold Farrell four or five ounces (about 112 or 140 grams) of methamphetamine. Farrell does not dispute those statements.

    c.    On September 12, 2019, Farrell led law enforcement agents on a high-speed chase on his motorcycle after leaving Chouinard's residence in McMinn County, Tennessee. During that chase, he dropped a backpack containing 39 grams of methamphetamine, $10,000 in cash, and a digital scale. Upon his arrest following that chase, he had an additional $1,040 in his wallet and $2,064 in his pants pocket. Farrell admits that he had intended to distribute the 39 grams of methamphetamine that he dropped during the chase.

    d.    On October 8, 2019, Farrell crashed his motorcycle. Police found a backpack several feet away from him and the wreckage, and the backpack contained about 50 grams of methamphetamine packaged in about 30 baggies, as well as a digital scale. Farrell had $9,008 in cash in his wallet and pants pockets.

    e.    The United States and Farrell agree that he is responsible for distributing or possessing with the intent to distribute at least 1.5 kilograms but less than 5 kilograms of a

mixture and substance containing a detectable amount of methamphetamine.

f. The defendant admits that he conspired with other people, including Matthew Burke, Martin Chouinard, and Melinda Goins, to distribute and possess with the intent to distribute at least 50 grams or more of methamphetamine (actual) or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

g. Most or all of these events occurred in the Eastern District of Tennessee.

5. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

a. the right to plead not guilty;

b. the right to a speedy and public trial by jury;

c. the right to assistance of counsel at trial;

d. the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e. the right to confront and cross-examine witnesses against the defendant;

f. the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g. the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a. The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b. The Court will impose special assessment fees as required by law; and

c. The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. The defendant agrees that the court shall order restitution, pursuant to any applicable

provision of law, for any loss caused to: (1) the victim(s) of any offense charged in this case (including dismissed counts); and (2) the victim(s) of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offense(s).

10. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine, restitution, and/or money judgment amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount(s) immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine, restitution, and/or money judgment. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a. If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c. If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of this conviction on defendant's immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

13. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the

terms of this agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

15. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

*SIGNATURES ON NEXT PAGE*

1-4-21
Date

12-28-20
Date

January 4, 2021
Date

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

By: *(signature)*
Joseph G. DeGaetano
Assistant United States Attorney

*(signature)* Lance Farrell
Lance Farrell
Defendant

*(signature)*
Joshua S. Lowther
Attorney for the Defendant

9